**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

RICHARD BURTON, on behalf of himself and
all those similarly situated,

        *Plaintiff,*

v.

REDBOX AUTOMATED RETAIL, LLC,

        *Defendant.*

Civil Action No. 1:19-cv-05784

Hon. Andrea R. Wood

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND TO STAY PROCEEDINGS**

Plaintiff Richard Burton submits this Opposition to Defendant Redbox Automated Retail,
LLC's (Redbox) Motion to Compel Arbitration and to Stay Proceedings. (Dkt. No. 18).

## INTRODUCTION

Plaintiff brings this Telephone Consumer Protection Act (TCPA) action against Redbox
for repeatedly sending him text messages without his consent. Redbox continued to text him
even after he asked Redbox—through text messages and by contacting its representatives—to
stop. Redbox's motion to compel arbitration should be denied because Redbox has failed to
show that Plaintiff ever assented to its Terms of Use, which include an agreement to arbitrate.

Contrary to what Redbox suggests, Plaintiff has never opened a Redbox account, whether
at a kiosk or online. Redbox's attempt to shoehorn its agreement with Plaintiff's *fiancée* fails.
Plaintiff is not seeking to invoke the benefits of Redbox's agreement with his fiancée, and he
neither directly benefited from the terms of her account nor authorized her to enter into any
agreement with Redbox on his behalf. Redbox's estoppel and agency arguments are therefore

1

insufficient.

The Court should thus reject Redbox's attempt to force Plaintiff to arbitrate claims he never agreed to arbitrate. The motion should be denied.

## FACTUAL BACKGROUND

Plaintiff repeatedly received text messages on his cellular phone from Redbox encouraging him to rent or purchase movies or games from Redbox. ¶¶ 10-12, 24-28.[1] Many of the text messages told Plaintiff to reply "stop" in order to stop receiving further text messages from Redbox. *E.g.*, ¶¶ 10, 14-20. On February 22, Plaintiff replied "stop" in two separate text messages. ¶ 13. Redbox continued to text Plaintiff.

Another set of unsolicited texts from Redbox to Plaintiff's phone began on May 26, 2019. ¶ 14. Even after Plaintiff twice replied "stop," he received more text messages from Redbox on June 10, June 17, June 19, July 25, August 5, August 12, August 17, August 19, and August 23. Plaintiff replied "stop" to each message, sometimes up to four times. ¶¶ 14-23.

After his repeated "stop" replies went ignored, Plaintiff called Redbox in July 2019 to request that Redbox stop sending him marketing text messages, but the text messages continued. ¶ 31. In an online chat with a Redbox representative on August 6, Plaintiff again asked that Redbox stop texting him. ¶ 32. The Redbox representative assured Plaintiff that within 48 hours he would stop getting Redbox texts. Nevertheless, Redbox continued to text Plaintiff, including on August 12, 17, 19, 22, and 23. ¶¶ 20-23, 32.

Plaintiff alleges that Redbox's use of an automatic telephone dialing system to send telemarketing text messages to his cell phone without his permission violates the TCPA. ¶¶ 41-46. Plaintiff further alleges that Redbox has knowingly violated the TCPA, as it has twice been

---

[1] All "¶" references are to the Class Action Complaint. (Dkt. No. 1).

2

previously sued for sending similar text messages and knows that the TCPA prohibits sending auto-dialed text messages without a consumer's prior written consent and after a consumer revokes such consent. ¶¶ 36-40.

## LEGAL STANDARD

"[I]in order to rule on a motion to compel arbitration . . . the Court must first determine whether there are grounds at law or in equity for revocation of contract, including the question of whether parties have agreed to arbitrate the dispute in question." *Sgouros v. TransUnion Corp.*, No. 14 C 1850, 2015 WL 507584, at *3 (N.D. Ill. Feb. 5, 2015) (citation omitted), *aff'd*, 817 F.3d 1029 (7th Cir. 2016). "An enforceable agreement to arbitrate must first exist between the parties before the courts can compel arbitration." *Sanato v. Sears, Roebuck & Co.*, 259 F. Supp. 3d 873, 875 (N.D. Ill. 2016) (alteration, internal quotation marks, and citations omitted); *see Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508, 516 (2004) (holding that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit") (citation omitted).

## ARGUMENT

Redbox spends most of its motion discussing clickwrap agreements and the purported enforceability of the arbitration agreement. (Mot. at 6-10, 13-15). But these arguments are irrelevant absent an agreement to arbitrate in the first place. Redbox has not shown that Plaintiff ever assented to Redbox's Terms of Use (Terms) containing the arbitration provision it now seeks to invoke. Instead, it argues that Plaintiff should be equitably estopped from denying the validity of the arbitration agreement. That argument fails because Plaintiff is not seeking to enforce any provision of the Terms and he did not receive a direct benefit from them. Nor has Redbox adduced any evidence suggesting that his fiancée ever acted as his agent.

In sum, Plaintiff cannot be required to arbitrate when he never agreed to do so. Redbox's

3

motion should therefore be denied.

**I.      Redbox Has Not Established Formation of an Arbitration Agreement.**

Whether a valid and enforceable arbitration agreement exists is determined under state

contract law. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

"Formation of a contract requires mutual assent in virtually all jurisdictions; Illinois courts use an

objective approach to that question." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th

Cir. 2016). Under Illinois law, an "element[] essential to the formation of a contract is a

manifestation of agreement or mutual assent by the parties to its terms, and the failure of the

parties to agree upon or even discuss an essential term of a contract may indicate that the mutual

assent required to make or modify a contract is lacking." *Delcon Grp., Inc. v. N. Tr. Corp.*, 187

Ill. App. 3d 635, 643, 543 N.E.2d 595, 600 (1989); *Urban Sites of Chicago, LLC v. Crown

Castle USA*, 979 N.E.2d 480, 496 (Ill. App. Ct. 2012). Further, "Illinois law requires that a

consumer be provided reasonable notice of all the terms and conditions of an agreement as well

as reasonable notice that . . . the consumer is assenting to the agreement." *Johnson v. Uber

Techs., Inc.*, No. 16 C 5468, 2017 WL 1155384, at *1 (N.D. Ill. Mar. 13, 2017).

As the "party seeking to compel arbitration" Redbox "has the burden of establishing an

agreement to arbitrate." *Baker v. Santander Consumer USA*, No. 18 C 07365, 2019 WL

4750287, at *2 (N.D. Ill. Sept. 30, 2019). Redbox makes no attempt to meet its burden with

evidence that Plaintiff entered into a valid agreement to arbitrate. Instead, it relies on generalized

statements regarding its Terms. According to Redbox, customers who use a Redbox kiosk "are

required to accept the Terms of Use as a condition of their rental." (Mot. at 3). Redbox also

allows customers to rent movies and games through its website, and customers who log in to the

website must likewise agree to the Terms. *Id.* at 4. Redbox asserts without evidentiary support

4

that Plaintiff agreed to its Terms "when he completed rental transactions at Redbox kiosks, when he logged into the Redbox account online, and when he continued to conduct business with Redbox" after it updated its Terms. (Mot. at 7).

Redbox admits that the only account at issue is *not* Plaintiff's account, but rather his fiancée's. And the evidence Redbox submits does not show that Plaintiff ever opened an account with Redbox or assented to its Terms. Nor could it, because Plaintiff has not opened an account with Redbox. Burton Decl., ¶ 7. Redbox points out that in July 2016, Plaintiff responded to its "call[] to action" for special offers on July 29, 2016. (Mot. at 5-6). But Redbox does not argue, much less establish, that someone who responds to a "call to action" must open a Redbox account or consent to its Terms, and, in any event, Redbox did not add an arbitration provision to its Terms until October or November 2016. (Mot. at 4).

Redbox's claim that Plaintiff was put on notice of its Terms is conjecture. *See* Mot. at 6 ("Plaintiff would necessarily have encountered the interfaces described above and accepted the Terms"). Plaintiff has never created an account or viewed Redbox's Terms. Burton Decl., ¶¶ 7, 9. Plaintiff cannot be compelled to arbitrate based upon an arbitration agreement he lacked notice and was unaware of. *See Johnson*, 2017 WL 1155384, at *1 (refusing to compel arbitration where the defendant "[f]ailed to support its motion with the facts necessary" to determine whether the plaintiff received "reasonable notice of the terms, as well as unambiguous assent").

Redbox has not met its burden of demonstrating that a binding contract was formed here. When the parties dispute the existence of an arbitration agreement, the evidentiary standard is akin to the standard for summary judgment and the Court "accepts the non-movant's evidence as true and draws all justifiable inferences in the non-movant's favor." *Thompson v. AT&T Servs., Inc.*, No. 17 C 3607, 2018 WL 4567714, at *6 (N.D. Ill. Sept. 24, 2018) (citation omitted); *see*

*also Sanato*, 259 F. Supp. 3d at 876 (plaintiff's "sworn declaration" created a material factual dispute precluding arbitration). By failing to present any evidence showing that Plaintiff assented to its Terms, Redbox failed to carry its initial burden. *Thompson*, 2018 WL 4567714, at *6 (denying motion to compel when the defendant did not provide any evidence with its opening brief and attempted to introduce evidence for the first time on reply). The only facts before the Court are undisputed: Plaintiff is not and never has been a Redbox account holder. *See, e.g.*, *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 793 (N.D. Ill. 2011) (denying motion to compel arbitration where the plaintiff did not assent); *Anand v. Heath*, No. 19-CV-00016, 2019 WL 2716213, at *3 (N.D. Ill. June 28, 2019) (plaintiff could not have assented when she lacked "actual notice of the terms and conditions the defendants sought to impose").

## II. Redbox's Equitable Estoppel and Agency Arguments Are Without Merit

Lacking evidence of assent, Redbox falls back on the disfavored arguments that Plaintiff should be estopped from denying contract validity and bound to arbitrate under agency law. (Mot. at 10-12). But Redbox cannot rely on equitable estoppel because Plaintiff is not seeking to enforce the Terms and any benefit he received from his fiancée's use of her Redbox account is indirect. Redbox's agency argument fares no better as it is based entirely on speculation.

### a. Plaintiff Does Not Seek to Invoke a Provision of Redbox's Terms of Use and Has Not Received Any Direct Benefits

The Seventh Circuit has held that—"even in the arbitration context—the court must apply traditional state promissory estoppel principles to decide whether a non-party should be bound by the terms of another's contract." *Warciak v. Subway Restaurants, Inc.*, 880 F.3d 870, 872 (7th Cir. 2018). In Illinois, "[a] claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person. The party asserting a claim of estoppel must have relied upon the

acts or representations of the other and have had no knowledge or convenient means of knowing the facts, and such reliance must have been reasonable." *Ervin v. Nokia, Inc.*, 349 Ill. App. 3d at 514,). "The determination of whether a party is equitably estopped is fact-specific and is not to be made based on inferences." *Hospira, Inc. v. Therabel Pharma N.V.*, No. 12 C 8544, 2013 WL 3811488, at *14 (N.D. Ill. July 19, 2013).

Redbox claims that Plaintiff should be equitably estopped from avoiding the Terms because he "benefitted from the promotions he received as well as the frequent rentals he made pursuant to his relationship with Redbox." (Mot. at 11). Redbox's effort to invoke equitable estoppel fails because the Complaint makes no mention of, and does not seek to enforce, any provision of the Terms. *See* ¶¶ 62-76; *see also Pereira v. Santander Consumer USA, Inc*., No. 11 C 8987, 2012 WL 4464893, at *1 (N.D. Ill. Apr. 2, 2012) ("[A] party will be estopped from refusing to arbitrate while simultaneously seeking to enforce another provision in the contract containing the arbitration provision.") (citation omitted); *Henry Techs. Holdings, LLC v. Giordano*, No. 14-CV-63-JDP, 2014 WL 3845870, at *4 (W.D. Wis. Aug. 5, 2014) ("[T]he touchstone of this form of estoppel . . . is whether the non-signatory has brought suit against the signatory premised upon the agreement that contains the arbitration clause at issue, thus seeking the agreement's direct benefits.").

Of dispositive import, Plaintiff's TCPA claims arise out of Redbox's violations of a federal statute, not the Terms themselves. Recently in *A.D. v. Credit One Bank, N.A.*, the Seventh Circuit rejected the argument that a TCPA claim necessarily seeks benefits under an underlying agreement between a plaintiff and a third party. 885 F.3d 1054, 1064 (7th Cir. 2018).[2] As the

___

[2] *A.D.* applies the common law of Nevada which likewise "prevents a non-signatory from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause." 885 F.3d at 1064 (internal quotations and citation omitted).

Seventh Circuit explained, the "core" of the plaintiff's claims arose "under a completely separate statute protecting her from harassing phone calls" and "[i]n no way can her cause of action be considered premised on the cardholder agreement." *Id.*; *see also Pereira*, 2012 WL 4464893, at *1 ("In every case relied upon by Santander, the non-signatories sought to enforce one provision of a contract while seeking to avoid enforcement of the arbitration clause. Here, Pereira is not seeking to enforce any provision of Fazio's loan agreement. Her complaint, which alleges a violation of the TCPA, makes no mention of Fazio, the automobile, or the loan agreement."). As in *A.D.* and *Pereira*, Redbox's equitable estoppel argument is fundamentally misplaced because Plaintiff does not seek to enforce the Terms but instead seeks to vindicate his right under federal law to be free from harassing text messages.

Redbox's equitable estoppel argument fails for the additional reason that whatever benefit Plaintiff may have received from his fiancée's use of her Redbox account is too indirect and attenuated to justify estoppel. "A nonsignatory party is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 688 (7th Cir. 2005). "But caselaw consistently requires a *direct* benefit under *the contract containing an arbitration clause* before a reluctant party can be forced into arbitration." *Id.* (emphasis in original). A benefit that is "too attenuated and indirect" cannot "force arbitration under an estoppel theory." *Id.*; *see Hospira, Inc.*, 2013 WL 3811488, at *14 (defendant cannot compel a plaintiff to arbitrate "by relying solely on inferences and unsupported allegations" to claim estoppel).

Courts in other TCPA cases have repeatedly rejected arguments similar to Redbox's. *See A.D.*, 885 F.3d at 1064-65; *Pyciak v. Credit One Bank, N.A.*, No. 17-11415, 2018 WL 4787660, at *1 (E.D. Mich. Oct. 4, 2018); *Peppers v. Credit One Bank N.A.*, No. 17-CV-2190, 2018 WL

8244002, at *1 (C.D. Ill. Nov. 26, 2018); *Pereira*, 2012 WL 4464893, at *1. In *A.D.*, the plaintiff's mother opened a credit card account with the defendant, which began calling the plaintiff's cell phone number to try to collect her mother's debt. 885 F.3d at 1058. The mother had signed a cardholder agreement with an arbitration clause, and when the plaintiff sued for TCPA violations, the defendant moved to compel arbitration, claiming that the plaintiff was bound under a "direct benefits estoppel" theory because she had at least once used her mother's credit card to make purchases—in that case, fruit smoothies. *Id.* at 1058-59. The Seventh Circuit rejected the defendant's contention that the plaintiff had directly benefited from the cardholder agreement because she was able to use the credit card to buy smoothies, explaining that any benefit she received was derived from the mother-daughter relationship, she had no relationship with the defendant, and that it was the plaintiff's mother who benefited from the cardholder agreement because it allowed the mother to make purchases using the credit card. *Id.* ("Credit One's position that A.D. directly benefited under the cardholder agreement and is therefore estopped from denying the application of the arbitration clause simply misapprehends the purpose and scope of the direct benefits estoppel remedy.").

Likewise, in *Pyciak*, the plaintiff sued the defendant for violating the TCPA by making unauthorized phone calls to collect a credit card debt that his wife allegedly owed. 2018 WL 4787660, at *1. The plaintiff did not use the card, though he sometimes paid the credit card bill. *Id.* Defendant moved to compel arbitration arguing that the plaintiff should be estopped from denying the enforceability of the arbitration clause because he directly benefited from his wife's use of the credit card to make "household purchases." *Id.* at *3. The court rejected the defendant's argument, explaining that the plaintiff did not directly benefit from the agreement because he was not trying to enforce other provisions of the agreement against the defendant and

any benefits he might have received were "too indirect and attenuated to enforce arbitration under an estoppel theory." *Id.* (citing *Zurich*, 417 F.3d at 688; *A.D.*, 885 F.3d at 1063-64).

*Peppers*, 2018 WL 8244002, is to the same effect. The plaintiff alleged that the defendant violated the TCPA by calling her to try to collect on her boyfriend's credit card debt. *Id.* The defendant argued that she was required to arbitrate because she sought benefits from the cardholder agreement containing an arbitration clause. The *Peppers* plaintiff personally activated her boyfriend's credit card using her cell phone and provided her phone number as a secondary number for the account. *Id.* She also made payments for the card and was physically present when her boyfriend made purchases with the credit card. *Id.* at *2. The court found that the defendant could not bind the plaintiff to the arbitration agreement based on an estoppel theory because, among other things, the plaintiff was never named as a user on the account and whatever benefits she might have received in the form of "household purchases made on the card" were "too indirect and attenuated to enforce arbitration under an estoppel theory." *Id.* at *6 (citing *Pyciak*, 2018 WL 4787660, at *3; *A.D.*, 885 F.3d at 1064).

Finally, in *Pereira*, the defendant argued without success that the plaintiff was required to arbitrate her TCPA claims based on her husband's loan agreement for an automobile. 2012 WL 4464893, at *1. The court rejected the defendant's contention that she "directly benefitted from the loan agreement because she drove the automobile acquired through the loan." *Id.* The court explained that the plaintiff was not seeking to enforce a provision of the loan agreement and the use of the automobile was "a benefit far too removed from the agreement for this Court to compel arbitration." *Id.*

As these cases make clear, a close or familial relationship is insufficient to justify the equitable remedy of estoppel, and the mere use of goods or services purchased by reason of the

10

agreement is not the type of direct contractual benefit the doctrine requires. The only case Redbox cites is not to the contrary. *See Everett v. Paul Davis Restoration, Inc.*, 771 F.3d 380 (7th Cir. 2014). The plaintiff in that case did not sign a franchise agreement among her husband, the defendant, and an LLC the evidence "clearly show[ed]" was "owned, controlled, and operated by" both the plaintiff and her husband. *Id.* at 382. Moreover, the plaintiff benefitted from the franchise agreement, "played an active role in running" the LLC, held herself out as its "Executive Vice President," and attended franchise meetings as the LLC's representative. *Id.* The evidence further showed that when the defendant terminated the franchise agreement, the plaintiff and her husband sought to circumvent the agreement's non-compete clause by "trad[ing] upon the goodwill and reputation built under the [defendant's] banner." *Id.* Given those unique circumstances, the plaintiff directly received "the benefit of the contract itself—namely owning and operating a [defendant's] franchise. Ms. Everett received the same benefits as her husband, which included benefitting from trading upon the name, goodwill, reputation and other direct contractual benefits of the franchise agreement." *Id.* at 384.

Unlike the plaintiff in *Everett*, Plaintiff did not directly receive the same benefits his fiancée received under the Terms. Instead, any benefit Plaintiff may have received from his fiancée's Redbox account is akin to the smoothies, household purchases, and use of a car that courts have held too indirect and attenuated for estoppel purposes. *See A.D.*, 885 F.3d at 1064; *Peppers*, 2018 WL 8244002, at *6; *Pyciak*, 2018 WL 4787660, at *3; *Pereira*, 2012 WL 4464893, at *1; *see also Williams v. Conn Appliances, Inc.*, No. 5:17-CV-1264-OLG, 2018 WL 7286211, at *3 (W.D. Tex. Apr. 9, 2018) (rejecting, as insufficiently direct, alleged benefits to plaintiff "from the presence of the television in the family's home, or because it allowed her son to make use of the video game console that she had given him").

11

b.      **Redbox's Agency Arguments Are Speculative and Insufficient**

"The party alleging an agency relationship must prove it by a preponderance of the evidence." *Testa v. Emeritus Corp.*, 168 F. Supp. 3d 1103, 1108 (N.D. Ill. 2016). Redbox's own authorities recognize this rule. (Mot. at 12). Yet Redbox offers only speculation in support of its agency argument. *See id.* (arguing that "Plaintiff *may* have requested that Ms. Zetko make specific rentals" and "*may* also have made a generalized request . . . Ms. Zetko *would* have had implied authority to act as Plaintiff's agent . . . .") (emphasis added). Redbox's showing is wholly inadequate to demonstrate an agency relationship as a matter of law.

"An agent's authority may be actual or apparent and, if actual, may be express or implied. Apparent authority is cognizable when a principal, through words or conduct, creates the reasonable impression in a third party that his agent is authorized to perform a certain act on his behalf. To prove the existence of apparent authority, a party must establish that: (1) the principal consented to or knowingly acquiesced in the agent's exercise of authority; (2) the third party, based upon his knowledge of the facts, possessed a good-faith belief that the agent possessed such authority; and (3) the third party relied to his detriment on the agent's apparent authority." *Gambino v. Boulevard Mortg. Corp.*, 398 Ill. App. 3d 21, 56, 922 N.E.2d 380, 413 (2009). "Implied actual authority arises when a principal, through words or actions, creates reasonable belief by an agent that the agent has authority to take a particular action." *Mohammed v. Uber Techs., Inc.*, 237 F. Supp. 3d 719, 733 (N.D. Ill. 2017).

There is simply no evidence suggesting that Ms. Zetko had actual or implied authority to act on Plaintiff's behalf. The record instead shows that Plaintiff was unaware of Redbox's Terms and never authorized Ms. Zetko to enter into any agreements on his behalf. Burton Decl., ¶ 11. Even if Ms. Zetko entered into a valid agreement with Redbox using her own name, nothing in

12

the record indicates she at any point suggested to Redbox that she was contracting for Plaintiff. *See Williams*, 2018 WL 7286211, at *4 ("Plaintiff's husband—the supposed agent—entered into the promissory note not in Plaintiff's name, but in his own name, and the record is wholly devoid of any evidence that might indicate that Mr. Williams executed the agreement at Plaintiff's instruction or subject to her control, or represented to anyone else that he was making the purchase on behalf of anyone other than himself.").

Accordingly, there is no basis to conclude Ms. Zetko had actual or implied authority to make an arbitration agreement on behalf of Plaintiff. *See, e.g.*, *Mohammed*, 237 F. Supp. 3d at 733 (denying motion to compel arbitration that had claimed a third party acted as the plaintiff's agent because the record was "insufficient to establish as a matter of law that Mohammed knew or should have known of the Rasier Agreement"); *Testa v. Emeritus Corp.*, No. 15 C 02449, 2015 WL 5183900, at *8 (N.D. Ill. Sept. 4, 2015) (defendant could not rely on "conclusory and unsupported gloss" to establish agency).

## III.    CONCLUSION

Thus, the motion to compel arbitration and stay proceedings should be denied.


Dated: December 13, 2019                    Respectfully submitted,

                                            By: /s/ *Simon S. Grille*

                                            Daniel C. Girard (CA ID No. 114826)
                                            Simon S. Grille (CA ID No. 294914)
                                            **GIRARD SHARP LLP**
                                            601 California Street, Suite 1400
                                            San Francisco, California 94108
                                            Tel: (415) 981-4800
                                            dgirard@girardsharp.com
                                            sgrille@girardsharp.com

                                            Elizabeth A. Fegan
                                            **FEGAN SCOTT LLC**
                                            150 S. Wacker Dr., 24th Floor

13

Chicago, Illinois 60606
Tel: (312) 741-1019
beth@feganscott.com

*Counsel for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of Plaintiff's Opposition to Defendant's Motion to Compel Arbitration and to Stay Proceedings to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

By: /s/ *Simon S. Grille*